My name is Clifford Dover and I am the counsel record for plaintiffs and appellants Pedro Ramos, Catalina Ramos and their minor disabled daughter. The issues in this case on appeal is did the district court follow legal precedent established by this Ninth Circuit in determining whether or not defendants denied a reasonable accommodation to the Ramos plaintiffs for the benefit of their minor disabled daughter where under 42 U.S.C. section 3604 F.3.B. of the Fair Housing Amendments Act of 1988 states that discrimination includes a quote refusal to make a reasonable accommodation in the rules policies practices and or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy the dwelling. I say decidedly not the district court did not follow established legal precedent in this regard that the district court inappropriately applied an arbitrary subjective analysis without any reference to the rule of law which this court of review strictly requires and in so doing committed reversible error. The main two Ninth Circuit cases that I rely upon to establish this reversible error are the U.S. versus California mobile home case which is on occasion referred to as Mobile Home 1 and the Giebler versus M&B Associates case, 2003 case. Now under Giebler as the district court correctly pointed out in order to prevail under 3604 F.3.B. claim the Ramoses were required to show that an accommodation was sought on behalf of their daughter and that she was in fact handicapped within the meaning of section 3602H of the Fair Housing Act. Two, that defendants knew or should have known that she was disabled. Three, that a reasonable accommodation quote-unquote may be necessary to afford her full enjoyment of the Ramoses dwelling although the district court's language was more restrictive was necessary, was reasonable necessary and four, the defendant refused to permit the reasonable accommodation. Now this necessity concept under the third prong of the Giebler analysis requires at minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability. Giebler further mandated a two-part test in analyzing the reasonableness of an accommodation request and stating that an accommodation which permits a must be made unless the accommodation one, imposes an undue financial or administrative burden or two, requires a fundamental alteration in the nature of the program. Nowhere in the district court's decision is this reasonableness analysis under Giebler used. Nowhere. Nowhere is there even an attempt to use it in order to attempt to discredit the plaintiff's case in any way based on evidence presented at trial. It simply was ignored. Instead the district court arbitrarily determined the reasonable issue utilizing the subjective testimony of defendants and their paid witness who had never seen the child nor had spoken with their parents concerning issues relating to the child. Further, there was no evidence of this reasonableness analysis brought forth at trial, only vague, subjective, speculative, and sometimes wildly so, issues of a supposed burden on defendants where in the opposition defendants state that the arbitrary burden included a, quote, risk of serious bodily injuries, although to whom neither they nor the district court specified. It wasn't my clients that they were, they were. There was also a mention of a burden of supervising an attractive nuisance and a loss of insurance coverage and a supposed violation of the California mobile home laws pertaining to access to utilities and fence height requirements that supposedly related to the enclosure of my client's trampoline, which was completely discounted by the testimony of the Oceanside City Mobile Home Park inspector at trial who testified that the city simply did not regulate what it considered to be play apparatus, such as one of the difficulties here is that we've got a bench trial and the district court made findings that were contrary to your position. That's correct. And in so doing, it ignored established legal precedent. Well, spell it out how it ignored precedent. Well, the precedent is under Giegler, you have to do analysis based on the reasonableness of the request, and the reasonableness in that test is the undue financial administrative burden. Which the district court said would, I mean, the district court considered the testimony that there would be a financial burden or risk by losing insurance on the part of the landlord. Correct. And in so doing, that's error. Why? Well, because case law is well-established that insurance cannot be used as an issue in determining whether or not an accommodation request is reasonable. Because there have been plenty of cases such as concerns over wheelchair ramps, for instance. The concern would be, well, the person would fall over and injure themselves, and their cells wouldn't be soothed, that we wouldn't be able to obtain insurance if you put a wheelchair ramp on our property or in the second floor for discrimination. Well, we can't get insurance if you rent to people on the second floor who have children, because they're going to fall and they're going to injure yourself and they're going to get sued. The courts have been pretty consistent in stating those are not legal basis for denying a reasonable accommodation request. Now, going to that, again, I discussed the issue of insurance as a term to condition approving an accommodation request based on insurance issues. And I cited legal precedents in that regard, I think it was with the Wade case. And also the joint statement by HUD and DOJ also stated that you cannot use insurance issues as a way of denying a reasonable accommodation request. Now, there could be an issue with your insurance company if, in fact, they do not want to insure you if you allow this to happen. Well, that's on the insurance company, as that is between the housing provider and the insurance company in that regard. District court found that there wasn't a link between the request and the problem that the child particularly has. Correct. And I will skip and address that issue. Regarding the nexus analysis, the district court's analysis of the nexus between the use of the trampoline and the benefits conferred upon the disabled child, it went completely astray in much the same manner that this district, particularly district court judge, did in another case in which this court reversed his decision. It's the McAllendon versus County of San Diego case, 1999. This court overturned the decision by this district court judge, who stated that the major life activity, which qualified the person as disabled, is a very broad term and includes activities that are private in character. This court sought, the district court sought to limit the major life activity in the McAllendon case of the inability of, strike that, in this case, the district court sought to limit the major life activity of the disabled child based on socialization with children at school. Now, this court rejected such a narrow analysis. In this case, after all, the 3604 F3B states that the accommodation may be necessary to use and enjoy the dwelling. That was the issue. Certainly, if the child was happy at home, there would be some ancillary benefit at school and socialization with the children at school. However, the main use of it was at home, for the benefit of this child at home. They used it to be able to provide incentive for this child to do normal things, to get away from the destructive behavior of scratching and screaming and hair, and use it as an incentive to say, look, if you do your homework, if you eat your vegetables, if you brush your teeth, if you get ready for bed, put your own pajamas on by yourself without prodding, we'll let you use this trampoline tomorrow. And they used it as an incentive and it worked. They didn't know why it worked, they just knew it worked. The doctor, Dr. Rowe, testified that it has something to do with the vestibular reaction that the autistic child has when bouncing repeatedly. It brings them some sort of pleasure, relaxes them, reduces stress. That's why they used it. And it worked. It worked for two and a half years without incident. Not a single reported snub toe, stub toe, or ankle injury or something of that nature. They knew it. The defendants knew for two and a half years my client used that trampoline without incident. They didn't complain about it in one respect or other. They allowed it to use it for some reason. When my clients had to remove it to place a new home on their property, they took that opportunity to tell them, no, you can't put it back up. Why? Because all of these subjective issues come up, like the children in the complex will come and they'll come jump on it and they'll do flips and they'll break their necks and we'll get sued. Well, none of that happened. None of that happened. My clients were very conscientious in how this thing was used. There was never any incident, never any complaint about other children trying to use this thing. They had it fenced. They had their home fenced and they had the trampoline fenced and closed to prevent any kind of injuries. My client, Mr. Ramos, he inspected, he testified, he inspected that thing on a daily basis. He checked the springs. He checked the enclosure. He made sure that it was used in a proper manner, in a conscientious manner, and the fact speaks for itself. Now, in the Mobile Home 1 case, what the court, district court failed to do also was take this specific case that said that, Mobile Home 1 said that each case is highly fact specific, not a broad brushstroke that was applied by the district court in this case, that trampolines are dangerous. You have a trampoline, therefore your trampoline is dangerous and an unreasonable risk of harm could occur. To whom? You know, I don't know, but the district court did not use a highly fact specific analysis that this court said must be used in the California Mobile Home 1 case. And in that respect, he committed error. He just didn't do it because if you go by the facts of this case, the Ramos, number three years without incident, defendants were fully aware of it, as I've stated. The daughter's pediatrician recommended the use of the trampoline for her, and the Ramoses gave extensive testimony of the myriad benefits obtained by the usage of this trampoline at home. And the analysis was completely faulty. It did not follow this court's rulings, and as such, it must be reversed. Thank you. Okay, thank you, Mr. Gilbert. Ms. Custer. Good morning. May it please the Court. Patricia Jo Custer on behalf of FLE's. This court must affirm the trial court's decision, as Justice Reimer pointed out, this was a full bench trial. This wasn't a summary judgment. This wasn't a conclusion by the district court on some statutory interpretation applying the law, triggering a de novo standard of review. This was a bench trial that lasted several days. The record is clear. The memorandum of decision is very detailed, very thoughtful. The district court conducted a full factual inquiry, including expert testimony, prepared a detailed decision with five pages of facts, where the court set forth the testimony that it considered in its analysis as to the elements of plaintiff's case, which Helen's counsel just set forth, and it is the standard of review well settled in this circuit, as in probably every must be affirmed. Significant deference is given to the trial court's findings of fact, and under the clear error standard, this court cannot reweigh the evidence and reconsider it. The court can only reverse if it finds the district court's findings are implausible and it has a definite and firm conviction that a mistake was made. The appellant has failed to point out a mistake. The appellant has pointed out his side of the facts, some of which are not entirely accurate when reviewing the record, and simply states that the district court got it wrong. That is precisely the type of decision that must be affirmed under Hussein and the other Ninth Circuit, Cirkovich, is that how it's pronounced? Case holding that the standard of review, in this case in particular, under the expert testimony that the court considered and weighed and utilized in coming to its conclusion that the use of a 12-foot above-ground trampoline in a mobile home park was not a reasonable accommodation because it posed an unreasonable risk of injury, this court must defer to that credibility finding by the district court absent a clear and conviction error that there was a mistake. There was no evidence presented by the appellants at trial that a 12-foot trampoline is, in fact, safe. Well, other than the fact that they've used it for a number of years without any problems. They used it for over two years with no reported cases of injury. However, the fact that a person has an open, uncovered, abandoned well on their property that no child has fallen into yet does not make that a safe condition. It simply means that an accident has not occurred. The articles published by the American Academy of Pediatrics, which were submitted to the trial court, referred to in the court's memorandum of decision, and which were submitted to this court with appellee's supplemental excerpts of the record, are actually shocking as to how dangerous trampolines are. I personally was unaware until reading these articles how dangerous they are. The number of spinal cord injuries, catastrophic injuries, and deaths led the American Academy of Pediatrics to actually issue a policy statement recommending banning the use of trampolines entirely for recreational, home, and even competitive use. Having that knowledge, the owner of this land cannot possibly allow this theory that it's a reasonable accommodation. The plaintiffs haven't met the very first element of setting forth a request for a reasonable accommodation. And this court, the Ninth Circuit, pointed out in the Giebeler decision that it is common, and appellant did it today, for parties requesting accommodations to truncate the phrase reasonable accommodation and simply eliminate the reasonable word and say we want an accommodation. This is a case where the accommodation requested doesn't meet the reasonable test. Number one, the court made detailed factual findings on those, and the appellant has failed to show this court how those findings were a mistake or implausible. I think the case ends right there. But then the court went on and did a further detailed analysis on the lack of a causal connection, the lack of a link between the use of the trampoline and the child's impairment of the major life activity of socialization. There was no medical professional provided by the plaintiffs at trial who testified that the use of a trampoline or this sort of repetitive behavior improves socialization. It instead tends to be a technique, according to the occupational therapist, Dr. Gretsch, who works full time with autistic children, it tends to be a technique that parents use because it is easy for them to deal with difficult behaviors, to calm temper tantrums, but not that it actually ameliorates the impairment of the major life activity of socialization and communication, which is the primary difficulty of the disorder of autism. In fact, the occupational therapist's recommendations are to the contrary, that a where they want to do jumping on trampolines repetitively or playing with cars or wheels, that that sort of behavior should be discouraged and not encouraged, because from an occupational therapist standpoint, that sort of obsessive, repetitive behavior interferes with the child's ability to broaden their functions, to be able to communicate with others and to do better with socializing and playing. And this child is in a regular classroom. She's not in special ed. She's mainstreamed in regular school. So one of the concerns of the occupational therapist is, you know, to get her to do better with socializing with peers and playing at recess. And this kind of repetitive, obsessive behavior that often autistic children engage in is something to be avoided and discouraged. It's interesting that you've made the point that this was useful to the parents, but no evidence that it was useful to ameliorate her actual disability. Is our law so narrow that the fact that it would be useful to the parents in helping to keep peace in their home in order to prevent her from scratching herself and acting out in ways that might be disruptive to the family as a whole, that a trampoline cannot be useful to that purpose? It does appear that their testimony was that it's useful for that purpose. I submit that there was a credibility issue on that. The trampoline was absent for two years, during which time the parents took no steps to use one. They didn't go find one there. As the occupational therapist testified, she in her practice, under her controlled therapeutic environment, uses many trampolines holding hands with children and they do some metronome therapy. As you're pointing out, if the use of a trampoline was so beneficial to the family relationship, then why wasn't there any testimony offered at trial that they went and found the use of a trampoline elsewhere during the period of time they did not have one on their lot? So I think there's a credibility issue there. But to get back to the bigger question, could the use of an accommodation to improve a family life in a FHAA case be a reasonable accommodation? I would have to answer that probably yes. Probably socializing and family life is a major life activity. To the extent somebody needs an accommodation to improve family life, I would agree. But not a dangerous condition. Not a dangerous condition that is so dangerous the American Academy of Pediatrics recommends that they be banned. So, for example, there are cases out there where people who are not blind but who have anxiety disorders have been permitted to have companion pets, where other residents of the housing complex can't have pets. But it's been shown that for some people, having a pet is helpful to these anxiety disorders. So that kind of a hypothetical, I would answer yes. You know, if having a pet for a child helps calm the child, helps the family get along, helps temper tantrums, helps socializing, that would not be an unreasonable, dangerous accommodation and we wouldn't be here in a case like that. But if the child wants a vicious pit bull that just came straight from Michael Vick's property, I would say no. No. Yes, an expert may say that having a pet helps the child. But not if it's a dangerous condition, subjecting a landlord in this case, a landlord to a non-delegable duty in which he would face strict liability for injuries to anyone on that trampoline. And I want to make one, does the court have any other questions on that subject before I switch to the topic of insurance? I'm going to take that as a no. The court did not conclude that the trampoline was not a reasonable accommodation solely because there was an insurance problem. It is mentioned in the court's memorandum of decision, but it is clearly not the first, foremost, or primary factor. In fact, the inability to get insurance is simply further corroborating evidence of the danger of this trampoline. Insurance companies are in the business of risk analysis, and they underwrite based on risk. And the insurance company's comments to the park management that if you have a dangerous condition on your property, you are likely to lose your insurance, is simply corroborating and confirming evidence that experts in the field of risk analysis, separate and apart from the American Academy of Pediatrics, has also deemed these large ground trampolines to be too dangerous to have on your property. So it's not just a matter of a simple, well, we can't get insurance and therefore it's not a reasonable accommodation. That trivializes the risk of injury from this trampoline. The two critical findings of fact made by the district court must be affirmed by this court, absent a finding of a clear mistake. And I haven't heard anything today that causes me to believe the court should think there was a clear mistake. If so, I'd like to respond to it. I think we're OK. Thank you very much, Mr. Gilbert. Thank you, Your Honor. Contrary to what counsel said, I'm not saying that the district court simply got it wrong. I'm saying that the district court misapplied the established legal precedent in this regard. The wild assertion about an open analysis, analogizing to an open covered well that my clients or someone else might fall into is just not established by any of the facts presented in this case. As stated, my clients used this trampoline in an extremely conscientious manner. It was no mistake that there were no issues relating to the use of this trampoline for over two and a half years. I haven't heard anything about analyzing this case under the Giebler analysis or the California mobile home case analysis. There's nothing in the memorandum of decision by the district court and there was no analysis brought forth by the defendants either. As far as the American Academy of Pediatrics articles that were presented over my objections because I couldn't cross-examine these articles, they were simply Googled articles. In preparation for coming here today, last night, I Googled three words, autism, children, and trampoline, and then benefit, four words, and I got over 800,000 hits on that. I can Google anything and get anything that would go towards what I wanted it to say. They didn't present any other kind of articles contrary to the ones that they wanted to present, and that's what they got. Thank you, counsel. The matter is argued to be submitted and the court will stand in recess for the day.
judges: Alarcon, Rymer, Bybee